**Daniel BARICHELLO, individually and on behalf of all others similarly situated, Plaintiff–Appellant,**

v.

**Jesse McDONALD, Director of the Department of Mental Health and Developmental Disabilities; Angelo Campagna, Director of Elgin Mental Health Center; and Ernest Marquez, Administrator of the Forensic Treatment Program of Elgin Mental Health Center, Defendants–Appellees.**

No. 94–2810.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1995.

Decided Oct. 16, 1996.

Mark J. Heyrman, Sharon Swingle, Law Student (argued), Adam Goodman, Mandel Legal Aid Clinic, Chicago, IL, for Plaintiff-Appellant.

Jan E. Hughes, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants-Appellees.

Before RIPPLE and BAUER, Circuit Judges, and SKINNER, District Judge.*

SKINNER, District Judge.

Plaintiff-appellant Daniel Barichello represents a class of involuntarily committed mental patients at the Elgin Mental Health Center ("Elgin"). Barichello has filed a seven count complaint seeking injunctive and monetary relief, alleging that defendant officials of the Illinois Department of Mental Health and Developmental Disabilities ("DMH") have violated his rights by barring certain patients from receiving grounds privileges. On summary judgment, the district court ruled that defendants had qualified immunity. The district court also abstained *sua sponte* under the doctrines of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) from exercising jurisdiction over Barichello's equitable claims. On appeal, Barichello asserts that (1) the defendants are not entitled to qualified immunity, and (2) abstention was inappropriate in this case. We affirm.

## I.

## BACKGROUND

### A. *Barichello's Confinement History*

While awaiting trial for the murder of Joseph Treff in June 1983, Barichello began

---

* Hon. Walter Jay Skinner of the District of Massa-     chusetts, sitting by designation.

to exhibit signs of significant mental illness. At a fitness hearing conducted pursuant to 725 ILCS 5/104–16, psychiatrists diagnosed Barichello as a paranoid schizophrenic. Barichello was found to be unfit to stand trial ("UST"), and was placed in the custody of the DMH on November 3, 1983, pursuant to 725 ILCS 5/104–17(b).

After Barichello had spent a year at the Chester Mental Health Center ("Chester"), a judge of the Cook County Criminal Court conducted a discharge hearing, pursuant to 725 ILCS 5/104–25. At the conclusion of this hearing, the court found that the state had demonstrated beyond a reasonable doubt that Barichello had murdered Treff, and extended Barichello's treatment for five years, pursuant to 725 ILCS 5/104–25(d)(2). Upon completion of this term, Judge Morgan of the Cook County Criminal Court conducted a commitment hearing on June 30, 1989, pursuant to 725 ILCS 5/104–25(g)(2). After finding that Barichello continued to be UST, and that Barichello was "reasonably expected to inflict serious physical harm to himself and others and is unable to care for himself," Judge Morgan committed Barichello for a period of 40 years—a term equivalent to the maximum sentence for a murder conviction.

On March 27, 1991, Barichello was transferred from Chester to Elgin, a medium security facility. Since the transfer, Barichello has lived in the Forensic Treatment Center, a secured building which houses criminal defendants who have been found unfit to stand trial, pursuant to 725 ILCS 5/104–13 et seq. ("UST patients"), and persons who have been adjudicated not guilty by reason of insanity pursuant to 730 ILCS 5/5–2–4 ("NGRI patients"). Elgin also serves a large number of non-criminal patients, committed under the Illinois Mental Health Code (405 ILCS 5/1–100 et seq.).

### B. *Pass Privileges*

Under Illinois law, mental patients committed under criminal process are not permitted to leave their residential units unless accompanied by a mental health worker. *See* 730 ILCS 5/5–2–4(b) (NGRI patients); 725 ILCS 5/104–31 (UST patients). Illinois law does authorize these patients to obtain passes which allow unsupervised access to the community outside the hospital (an "off-grounds" pass) or to the hospital grounds (a "grounds" pass).

The issuance of either type of pass requires a court order. For NGRI patients, a pass recommendation is submitted as part of the treatment plan filed with the Illinois courts every sixty days. 730 ILCS 5/5–2–4(b). NGRI patients must request passes from the court through a DMH staff recommendation, and may not petition the court directly. *See People v. Owens,* 269 Ill.App.3d 152, 206 Ill.Dec. 478, 482, 645 N.E.2d 483, 487 (1994). Once the DMH staff has made a recommendation, the Illinois courts may accept or reject it. *See, e.g., People v. Robin,* 264 Ill.App.3d 936, 202 Ill.Dec. 798, 638 N.E.2d 666 (1994). The record does not indicate that there is an analogous statutory provision for submitting UST pass recommendations to the Illinois courts, or that UST patients may petition the court directly.

In May 1990, the Elgin staff severely curtailed the issuance of all passes following the escape of two patients who had off-grounds passes. Although Elgin has reinstituted a policy for submitting NGRI pass requests for court approval, the record does not indicate that there has ever been a similar program for UST patients.

In April 1993, Barichello indicated to his physicians that he would like to be considered for a grounds pass. The parties disagree about why this request was denied. Barichello cites a July 31, 1992 letter from a DMH Freedom of Information Officer stating *inter alia* that "at the Elgin Mental Health Center, McFarland Mental Health Center and Singer Mental Health & Developmental Center passes *are not requested* for UST clients." (emphasis added). Barichello interprets this letter as smoking gun proof that the Elgin staff had adopted a policy neither to recommend UST patients for passes, nor to pass any such recommendations on to the Illinois courts. Barichello argues that the adoption of this policy constitutes an abdication of constitutionally-mandated standards of professional conduct.

### C. *Proceedings Below*

Barichello filed a seven count complaint, asking for monetary, declaratory, and injunctive relief on five constitutional grounds, and monetary relief for two violations of the Illinois Mental Health Code. On July 26, 1993, the defendants moved for partial summary judgment on the ground of qualified immunity. In January 1994, the district court certified Barichello to represent a class of 25 Elgin UST patients who had been committed pursuant to 725 ILCS 5/104–25(g)(2).[1]

In his order of June 29, 1994, the district judge allowed defendants' motion for summary judgment on all claims for monetary damages, finding that defendants had qualified immunity. The district court also *sua sponte* determined that abstention was appropriate in this case under both *Burford* and *Younger* doctrines, and declined to exercise jurisdiction over the injunctive claims. Since that time, the defendants have conceded that *Burford* abstention was unwarranted in light of the panel decision in *Nelson v. Murphy*, 44 F.3d 497 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 671, 133 L.Ed.2d 521 (1995), a similar case involving NGRI patients. This appeal followed.

### II.

### ANALYSIS

### A. *Qualified Immunity on the Constitutional Claims*

■ We review a grant of summary judgment *de novo,* construing all inferences from the facts in "the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On a motion based on qualified immunity, summary judgment is not appropriate if the plaintiff "can present a version of the facts that is supported by the evidence and under which defendants would not be entitled to qualified immunity." *Hall v. Ryan,* 957 F.2d 402, 404 (7th Cir.1992). The plaintiff has a "threshold" pleading obligation of demonstrating that the infringed constitutional right was "clearly established" at the time of the violation. *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

On this record, the strongest version of the facts which Barichello could present is that the Elgin staff implemented a policy in May 1990 suspending further initiation of the court proceedings necessary to approve UST patients for passes. We conclude that even under this scenario, Barichello has not met his threshold obligation of demonstrating a violation of any clearly established constitutional right.

■ Count I alleges that the Elgin staff have treated UST patients and civil patients disparately with respect to their abilities to obtain passes, invoking the equal protection and due process holdings of *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). *Jackson* concerned a UST patient who was involuntarily committed to a state mental hospital "until sane." The equal protection portion of the case held that the state had not justified applying a "more stringent standard of release [for UST patients] than those generally applicable" to civil patients. *Id.* at 730, 92 S.Ct. at 1854. *Jackson* only concerns standards of release. There is no language in *Jackson* suggesting that UST patients have a right to the same treatment or conditions of confinement as civil patients. *See Jackson,* at 730–731 n. 9, 92 S.Ct. at 1854 n. 9 (stating that no disparity in treatment had been demonstrated and therefore was not at issue).

We found many cases following *Jackson* which discuss equal protection in the context of a patient's release. *See, e.g., Foucha v. Louisiana,* 504 U.S. 71, 85, 112 S.Ct. 1780, 1788, 118 L.Ed.2d 437 (1992). We have

---

1. The defendants contend that the Elgin staff decided in May 1993 to recommend that Barichello receive a grounds pass, but that this decision was rescinded on June 3 after Barichello punched another patient in the face. Inexplicably, the decision to recommend Barichello for a pass does not appear in Barichello's May 21, 1993 psychiatric evaluation. Although we do not consider this explanation in a review of a grant of summary judgment where all factual disputes are resolved in favor of the non-moving party, it does suggest that Barichello may not have been an appropriate class representative.

found no case, however, holding that the state is powerless to distinguish between criminal and civil patients in matters of treatment. While we do not doubt the state could justify many treatment distinctions including different grounds pass policies, *see, e.g., Heller v. Doe by Doe*, 509 U.S. 312, 318, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993), it is sufficient for the purposes of qualified immunity to conclude that no relevant constitutional right was clearly established.

■ Counts II through IV allege that Elgin staff deprived Barichello of a liberty interest without due process of law, in violation of *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). In balancing a mental patient's liberty interests against the relevant state interests, court review is limited to "mak[ing] certain that professional judgment in fact was exercised." *Youngberg*, at 321, 102 S.Ct. at 2461.

■ Count II alleges that Barichello has a fundamental right to "freedom of bodily movement," because Barichello has a liberty interest in rehabilitative treatment. *Youngberg* only held, however, that mental patients had liberty interests in "safety" and "freedom from bodily restraint." *Youngberg*, at 319, 102 S.Ct. at 2460. In *Youngberg*, the Court expressly declined to address whether UST patients had a general liberty interest in their training, treatment, or rehabilitation, because "a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." *Id.* at 317, 102 S.Ct. at 2459; *see also id.* at 318, 102 S.Ct. at 2459 ("this case does not present the difficult question whether ... [a mental patient] has some general constitutional right to training *per se*"). In addressing a qualified immunity defense, we cannot expand liberty interests beyond their clear demarcations.

Barichello also contends that the defendants' actions violated his liberty interest against unreasonable restraints. We do not think that the elimination of the pass program is sufficiently analogous to *Youngberg*'s concept of restraint to conclude that a fundamental right to the passes was clearly established. The failure to provide a grounds pass does not impinge bodily integrity, nor has there been any argument that it

endangers patient safety. *Cf. Youngberg*, at 310–311, 102 S.Ct. at 2455 (use of "shackles ... for prolonged periods on a routine basis"); *Washington v. Harper*, 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 ("unwanted administration of antipsychotic drugs"); *Lojuk v. Quandt*, 706 F.2d 1456, 1465 (7th Cir.1983), *cert. denied*, 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986) (involuntary electroshock therapy). We conclude that the denial of a pass is not in this class of restraint and does not violate a clearly established right.

Count III alleges that Barichello has a liberty interest in receiving care "in the least restrictive environment pursuant to an individualized services plan" under 405 ILCS 5/2–102(a). In 1992, a panel of this court held that an amendment to the UST provisions in the Illinois Criminal Code specifically abrogated the rights of UST patients to treatment "in the least restrictive environment." *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir.1992), overruling *Johnson by Johnson v. Brelje*, 701 F.2d 1201 (7th Cir.1983). Although *Maust* was not law at the time of the alleged infraction by the Elgin staff, the impact of the legislative amendments was sufficiently clear when enacted to place the continuing existence of the liberty interest in doubt.

■ Count IV alleges that Barichello has a liberty interest under 405 ILCS 5/2–100(b), which states "[a] person with a known or suspected mental illness or developmental disability shall not be denied mental health or developmental services because of ... criminal record unrelated to present dangerousness." Citing *Hewitt v. Helms*, 459 U.S. 460, 471–472, 103 S.Ct. 864, 871–872, 74 L.Ed.2d 675 (1983), Barichello contends that the use of "shall" in the statute creates a liberty interest. It is no longer clear, however, that the presence of certain imperative words is sufficient to create a liberty interest. *See Sandin v. Conner*, — U.S. —, —, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (replacing *Hewitt* test with an examination of the "nature of the deprivation"); *see also Whitford v. Boglino*, 63 F.3d 527, 531, n. 4 (7th Cir.1995) (suggesting that *Sandin* test

may be limited to prisoners). Even looking at the "explicitly mandatory language," the statute lacks the "specified substantive predicates to limit discretion" necessary to create a liberty interest. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989) (internal punctuation omitted).

■ The final constitutional claim is that the elimination of the pass program constituted punishment without an adjudication of guilt, in violation of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). We do not think that it was clearly established in 1990 that elimination of the pass program would constitute punishment. *See Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir.1986) (reasonable restrictions on outdoor recreation do not constitute punishment). Barichello does not argue that elimination of the passes has traditionally been regarded as punishment, or that it served a punitive purpose. See *Bell*, at 537–538, 99 S.Ct. at 1873–1874, quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 567–568, 9 L.Ed.2d 644 (1963). Similarly, Barichello does not attribute a punitive scienter to the Elgin medical staff. *Cf. Salazar v. City* of Chicago, 940 F.2d 233, 239 (7th Cir.1991) (intent is the linchpin of punishment).

Barichello has failed to meet his threshold burden of demonstrating that any of the constitutional rights he has asserted were clearly established in 1990. Accordingly, the defendants were entitled to qualified immunity, and dismissal of the claims for monetary damages was proper.

### B. *Abstention*

■ The term "abstention" refers to a series of doctrines by which a federal court may decline to exercise equitable jurisdiction over matters within its statutory subject matter jurisdiction. Because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them ... abstention rarely should be invoked." *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 2221, 119 L.Ed.2d 468 (1992), *citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

■ The abstention doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires that a federal court exhibit "comity," which is defined as a "proper respect for state functions." *Younger*, at 44, 91 S.Ct. at 750. As expounded by the Supreme Court, the *Younger* doctrine has come to mean that absent unusual circumstances, a federal court must refrain from entertaining injunctive relief which might interfere with the officers or judicial process of state courts and administrative agencies when important state interests are involved. *See, e.g., New Orleans Public Service, Inc. v. New Orleans*, 491 U.S. 350, 368, 109 S.Ct. 2506, 2518, 105 L.Ed.2d 298 (1989) *("NOPSI")*. This central principle is evident in the earliest *Younger* abstention cases, which all concerned attempts to enjoin criminal prosecutions under allegedly unconstitutional statutes. *See, e.g. Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). As criminal defendants have the opportunity during a prosecution to challenge the constitutionality of the statutory basis of the crime, the efforts of a federal court to enjoin the enforcement of constitutionally dubious statute would be duplicative. Worse, such efforts disparage the ability of state courts to interpret and enforce the constitution.

■ As the doctrine has expanded to civil contexts, the Court has continued to respect the right of state courts to establish their own procedures, *e.g. Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (writ of attachment procedure); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (required posting of appeals bond); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (entry of *ex parte* order by state court), or administer a system of justice. *See, e.g., Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt process); *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (discipline of attorneys). Federal courts must presume that state courts are capable of establishing

and administering judicial process consistent with the requirements of the federal constitution, and "that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil*, at 15, 107 S.Ct. at 1528.

The most recent and comprehensive exegesis of general abstention principles has been provided by the Supreme Court in *Quackenbush v. Allstate Ins. Co.*, —— U.S. ——, ——, 116 S.Ct. 1712, ——, 135 L.Ed.2d 1 (1996). These principles, as anticipated in *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir.1994) focus on three paramount concerns:

> (1) the judicial or judicial in nature state proceedings must be on-going;
>
> (2) the proceedings must implicate important state interests; and
>
> (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges.

*Hogsett* at 295. We will rely on this explication in our analysis. Review of a district court's decision to abstain under the *Younger v. Harris* doctrine is *de novo*. *See, e.g., Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir.1995).

As a preliminary argument, Barichello contends that *Younger* abstention must be raised by one of the parties, and therefore the district court was in error to rule *sua sponte*. Barichello asks us to hold that a *sua sponte* decision to abstain under the *Younger* doctrine constitutes *per se* reversible error. We decline to do so.

Although the issue of whether a district court may abstain under the *Younger* doctrine *sua sponte* is a question of first impression in this circuit, the path down parallel trails is well-trod. Several of our cases indicate that other types of abstention may be raised *sua sponte* by appellate courts. *See, e.g., Waldron v. McAtee*, 723 F.2d 1348 (7th Cir.1983) (*Pullman* abstention); *General Ry. Signal Co. v. Corcoran*, 921 F.2d 700 (7th Cir.1991) (*Burford* abstention).[2] Because all abstention doctrines involve a common "complex of considerations" about the role of federal courts *vis-à-vis* state institutions, we will "avoid drawing artificial distinctions among the various grounds for abstention." *Hogsett*, at 294. The abstention doctrines all concern the propriety of exercising subject matter jurisdiction. When confronted with circumstances that clearly implicate *Younger* concerns, a federal court must abstain. *See Colorado River*, at 816, n. 22, 96 S.Ct. at 1245 n. 22. The federal courts are "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). In the absence of a showing that a state has waived abstention arguments by expressly urging the federal court to address the merits, the issue may be raised on the initiative of the court. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986).

The decision whether to abstain "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). The "challenge must stand or fall upon the answer to the question whether the [Illinois] court action is the type of proceeding to which *Younger* applies." *NOPSI*, at 367, 109 S.Ct. at 2518.

With respect to the first of the three criteria identified above, we are satisfied that the plaintiffs are the subjects of ongoing state proceedings, namely, the criminal indictments that brought them to their present situation. We have no doubt that the protection of the community from mentally ill persons with violent criminal tendencies is an important, not to say compelling, state interest, the second of the three criteria.

---

**2.** Barichello's only support for a contrary proposition is a suggestion that the Supreme Court was "not inclined to examine the application of the doctrine *sua sponte*." *Swisher v. Brady*, 438 U.S. 204, 231, n. 11, 98 S.Ct. 2699, 2715 n. 11, 57 L.Ed.2d 705 (1978). Barichello's argument draws too long a proposition from too short a footnote. Even assuming that this language was not patent dictum, the expression of a disinclination implicitly suggests the power to do that which is disfavored.

The third criterion, that there must be adequate opportunity in the state court proceeding to raise the plaintiff's constitutional challenge, is not so clearly satisfied. In *People v. Owens,* 269 Ill.App.3d 152, 206 Ill.Dec. 478, 645 N.E.2d 483 (Ill.App. 1 Dist.1994), an NGRI inmate at Elgin filed a motion to modify his treatment plan to include unaccompanied on-grounds passes. In sustaining the denial of the motion by the circuit court, the appellate court ruled that the plaintiff was not entitled either to a hearing or to an independent psychiatric examination, since the statute did not provide for them. A majority of the panel is of the opinion that the *Owens* case is distinguishable from the present action because it is under a different statute and the nature of the relief sought is in some respects different. Despite the shadow cast by *People v. Owens,* in the spirit of the abstention cases cited above, we defer to the capacity of the state court to accord to the plaintiffs the constitutional relief (if any) to which they are entitled. Accordingly, we affirm the district court's decision to abstain.

### III.

### CONCLUSION

For the foregoing reasons the judgment of the district court is AFFIRMED.