Asuncion Maria TORRES, Plaintiff,

v.

Rafael FRIAS, 12th Ward Alderman; Manuel Lopez, 12th Ward Superintendent of Streets and Sanitation; Richard Zielinski, 12th Ward Inspector of Streets and Sanitation, in their official and individual capacities; and City of Chicago, Defendants.

No. 99 C 3772.

United States District Court, N.D. Illinois, Eastern Division.

June 30, 1999.

Paul L. Strauss, Steven Arthur Mange, Miner Barnhill & Galland, Chicago, IL, for Asuncion Maria Torres.

Peter J. Donoghue, Piper, Marbury, Rudnick & Wolfe, Chicago, IL, Marc E. Odier, City of Chicago, Dept. of Law, Chicago, IL, for Rafael-Frias.

Peter J. Donoghue, Marc E. Odier, for Manuel Lopez, Richard Zielinski.

Brian L. Crowe, Shefsky, Froelich & Devine, Ltd., Chicago, IL, Nancy L. Van Allen, Patricia M. Carroll–Smit, Tracey Renee Ladner, Lisa C. Leib, City of Chicago, Law Dept., Chicago, IL, for City of Chicago.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Asuncion Torres filed a Complaint on June 7, 1999 in which she alleges that in retaliation for her unsuccessful challenge against the incumbent 12th Ward Alderman for the City of Chicago, defendants have initiated a campaign of harassment and intimidation against her. As part of this campaign, Torres charges that in a vindictive prosecution, defendants have issued her citations for violation of the Chicago Municipal Code, which prohibits posting campaign signs on City property.

After filing her complaint, Torres filed an Emergency Motion for Preliminary Injunction. This court referred the matter to Magistrate Judge Keys. On June 16, 1999, Magistrate Judge Keys submitted a Report and Recommendation ("R & R") granting Plaintiff Torres' emergency motion for preliminary injunction and enjoining defendant from prosecuting Torres until final disposition of plaintiff's underlying complaint. Plaintiff is scheduled to have a hearing on her alleged violation in the coming weeks. Having reviewed defendants' written objections, each parties' submissions, as well as Magistrate Keys recommendation, the court adopts the R & R in full.

## Background

Magistrate Keys sets forth the relevant facts of this case in his R & R and in sum, his findings of fact are as follows.

Plaintiff Torres ran against Defendant Rafael Frias in the February 1999 aldermanic elections for Chicago' 12th Ward. Torres, the mother of three children had never before run for office. She is the president of her local ACORN chapter, a community based organization. Torres has been an outspoken critic of Frias, the incumbent alderman, his policies and practices. In particular, she criticized Frias' alleged lack of accountability to the residents of the 12th Ward and his alleged acceptance of a bribe during "Operation Silver Shovel".

Torres was Frias' strongest opponent in the aldermanic race. A number of organizations and major newspapers supported her candidacy, including the mayor, Defendant Richard Zielinski ("Zielinski"), a 12th Ward Inspector of Streets and Sanitation and Defendant Manuel Lopez ("Lopez"), 12th Ward Superintendent of Streets and Sanitation. Both Zielinski and Lopez were key players in Frias' campaign.

According to Torres, because she was an outspoken opponent of Frias, she was harassed and intimidated. This campaign of harassment included vindictive prosecution

of ordinance violations resulting from the posting of political signs on Defendant City of Chicago's ("City") property. Magistrate Keys concluded that Torres' claims were well-founded. (R & R at 3.) Judge Keys cites a number of incidents to support this conclusion. First, approximately three weeks prior to the election, Frias campaign press secretary formally challenged Torres' nominating petitions. Throughout this challenge, the press secretary would appeal any rulings which favored Torres. Torres notes that defeating these appeals was both costly and time-consuming. Second, in February 1999, Frias served Torres with a $1 million libel complaint. Third, Torres complains that "untrue and extremely vicious signs" were posted throughout the 12th Ward accusing her of unbecoming conduct, such as being arrested for prostitution and having children born with cocaine in their systems. She also alleges that her son was wrongfully arrested and Frias' employees intimidated her supporters. Finally, after the election, Torres received a postcard which read:

Hey Loser,

It's me again. Had a great time with you. This is a reality check for you: (Question.) Who ran for office and got her ass kicked? (Answer): You! (Solution): Years of psycho therapy or the quick way out. Remember, suicide is painless. P.S. Ed Nash says hi!

Ed Nash is Torres' former supervisor who allegedly harassed and intimidated her in the workplace.

On February 19, 1999, Lopez issued Torres an ordinance violation notice charging her with having campaign signs on City property. The ticket was issued after business hours, while Lopez was out campaigning for Frias. Lopez observed a man posting Torres campaign signs and informed him of the ordinance which prohibits the posting of campaign signs on City property.[1] Lopez then left, retrieved his ticket book and work vehicle and issued

the citation. Torres paid the $35 fine. Lopez also issued a citation for violation of the ordinance to Dean Miller, another Frias challenger in the 12th Ward 1999 election. These are the only citations Lopez ever issued under this ordinance. There are many other political signs posted on City property within the 12th Ward.

Frias won the 12th Ward election. Eight days after the election, on March 3, 1999, Zielinski cited Torres for an additional ordinance violation. In this citation, Torres is charged with violating the City's Municipal Code under § 10–32–110 which prohibits the taping of signs to City trees. Lopez approved the issuance of this additional ticket by Zielinski. The City obtained a default judgment in their favor, however, since Torres had not received notice of the violation, an administrative hearing officer later vacated that judgment. A hearing has been scheduled to address the merits of the charge and has been continued pending a ruling by this court. The only other citation Zielinski issued for a political sign violation was to Jesus Garcia who ran against Tony Munoz (a Frias supported candidate) in the 1998 state senate election. Lopez approved the issuance of both the Torres and Garcia citations.

On June 7, 1999, Torres filed the underlying Complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 et. seq. seeking: (1) a permanent injunction barring the City from proceeding with the June 17, 1999 hearing or otherwise prosecuting her for the ordinance violation she received on March 3, 1999; (2) a declaratory judgment that defendants' vindictive prosecution violates her rights under the First and Fourteenth Amendments to the Constitution; and (3) compensatory and punitive damages as well as reasonable attorneys' fees and costs.

---

1. Municipal code § 10–8–320 prohibits the posting of bills on public property and states that there is a rebuttable presumption that "any person whose goods, services, activities or events are promoted by a sign is a person who posted it or caused it to be posted" and will be issued the citation.

Torres then filed her Emergency Motion for Preliminary Injunction. The court referred the matter to Magistrate Judge Keys and after expedited discovery and a hearing, Judge Keys issued his R & R asking the court to grant plaintiff's motion.

### Analysis

Torres asks the court to issue a preliminary injunction, barring Zielinski and the City from prosecuting her for the alleged campaign sign violation until after a dispositive order in her § 1983 case has been entered. However, defendant urges the court to forgo reaching the merits of Torres' request in light of the *Younger* doctrine. In the alternative, they argue that a preliminary injunction is not justified in this case.

### I. Abstention

 Under the *Younger* doctrine of abstention, ordinarily, federal courts do not interfere with pending state proceedings. However, an exception to the *Younger* doctrine applies when a "person about to be prosecuted in state court can show that he will, if proceeding in state court is not enjoined, suffer irreparable damage." *Younger v. Harris*, 401 U.S. 37, 53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2] Courts have carved out a specific exception to the *Younger* doctrine where plaintiff can show bad faith or a harassing prosecution. *See Collins v. County of Kendall, Illinois*, 807 F.2d 95, 98 (7th Cir.1986). "[A] showing of a bad faith [prosecution] is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in Younger." *Collins*, 807 F.2d at 97. Another exception exists where plaintiff shows that the state court proceeding would not afford plaintiff an opportunity to raise his

constitutional claims. *Younger*, 401 U.S. at 49, 91 S.Ct. 746.

 Torres argues that defendants' selective prosecution of her in effect has chilled her right to engage in political activity, a cousin of the right to free speech guaranteed under the First Amendment. "When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction." *Collins*, 807 F.2d at 98 n. 5, *citing Sheridan v. Garrison*, 415 F.2d 699, 706 (5th Cir.1969), *cert. denied*, 396 U.S. 1040, 90 S.Ct. 685, 24 L.Ed.2d 685, (1970).

 Yet, before the court can find an exception to the *Younger*, plaintiff must allege specific facts to support an inference of bad faith. This requires "more than a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception." *Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir.1976). Furthermore, "the specific evidence must show that state prosecution 'was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights.'" *Collins*, 807 F.2d at 98, *citing Wilson v. Thompson*, 593 F.2d 1375, 1383 (7th Cir.1979).[3] Torres has presented ample evidence to suggest that she is indeed the subject of a bad faith prosecution.

Plaintiff cites a number of other incidents which, if true, suggest that she has been the subject of harassment for some time. However, the *Collins* court found that multiple prosecutions alone do not establish bad faith or harassment in and of

---

**2.** In *Younger*, the Supreme Court held that absent extraordinary circumstances, federal courts must abstain from enjoining ongoing state criminal proceedings. The *Younger* doctrine has since been extended to apply to certain state administrative proceedings that are judicial in nature, like the one at issue in this case. *See Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

**3.** On the other hand, plaintiff need not put on an entire case to prove bad faith. The facts need only "be sufficiently developed to allow the court to make a realistic assessment of [bad faith or harassment]." *Trust and Investment Advisers, Inc. v. Hogsett*, 43 F.3d 290, 297 (7th Cir.1994).

itself. *Collins*, 807 F.2d at 99. In this case, unlike *Collins*, Torres has alleged a number of additional facts which tend to show bad faith. First, Torres was not only subjected to multiple prosecutions. It appears that she and other Frias opponents were the *only* ones subjected to any prosecution at all under the political sign ordinances. Second, the fact that so many campaign signs were posted after Torres was issued a citation and remain posted on City property in the 12th Ward belies defendants' argument that strict enforcement of the municipal code is the motivation behind Torres' prosecution. Third, Torres and Frias' press secretary engaged in a protracted battle over her nominating petitions and Frias filed a civil complaint against her for libel. In addition, Torres suggests that the "untrue and extremely vicious signs" posted throughout the 12th Ward and accusing her of unbecoming conduct were the work of defendants, as was her son's arrest and the intimidation of her supporters.

The *Collins* court suggests that unsuccessful prosecution of a plaintiff alleging bad faith tends to support the notion that a *Younger* doctrine exception is warranted. *See Collins*, 807 F.2d at 101 (comparing *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (finding that bad faith exception to *Younger* doctrine existed where state attempts to prosecute federal plaintiffs had been uniformly unsuccessful) and *Krahm v. Graham*, 461

F.2d 703 (9th Cir.1972) (granting injunction in case where plaintiff endured over 100 prosecutions and none resulted in convictions)). In the instant case, since defendants have no evidence that Torres actually posted the offending signs, it is quite possible that their prosecution will be unsuccessful.[4]

■ A review of the general abstention principles also suggests that abstention in this case would be inappropriate. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).[5] The Supreme Court has enunciated the factors which a court must consider before granting a request to abstain. Before a court will apply an abstention doctrine, defendants must show: (1) the judicial or judicial in nature state proceedings must be on-going; (2) the proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges. *See Barichello*, 98 F.3d at 955. While the first factor is satisfied in this case, defendants have failed to establish the latter two.

Given defendants' apparent failure to enforce the municipal code provisions at issue strictly and uniformly,[6] defendants argument that keeping political signs off City property is an important state inter-

---

4. As Magistrate Judge Keys rightly points out, the provision under which Torres is being prosecuted does not presume that the person whose goods, services, activities, or events are promoted by the offending signs is the person who committed the offense. As such, without proof that Torres herself posted the signs, it is unlikely that she will be found responsible for violating the provision. *See* Mun.Code § 10–32–110.

5. Defendants argue that under the *Colorado River* abstention doctrine, the court must defer to the state courts and City administrative hearing officers as well. In *Colorado River Water Conservation District v. United States*, the court required abstention where the contemporaneous exercise of concurrent jurisdic-

tions, either by federal courts or by state and federal courts is involved. The court does not believe *Colorado River* applies in this case. *Colorado River* was meant to govern cases that do not involve "weightier considerations of constitutional adjudication and state-federal relations." *Colorado River*, 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Of course, Torres alleges that adjudication of her constitutional claims must take place before the City can attempt to prosecute her for the ordinance violation.

6. In the R & R, Judge Keys noted that there is an unwritten, yet understood practice that no political sign posting is ticketed on election day. (R & R at 6, n. 6).

est seems almost disingenuous. Actions speak louder than words. If keeping the neighborhoods clean and free of litter was really a major concern, defendants would enforce those laws enacted to further that goal more strictly. They have not. Plaintiffs presented evidence that various campaign signs could be found plastered throughout the 12th Ward community.

Furthermore, it is not clear that Torres will have a fair opportunity to raise this constitutional challenge during her hearing or any subsequent state court proceedings. Torres has already been informed that she will not be given the opportunity to present her constitutional claims as a defense during the DOAH hearing. The hearing officer noted, "There is no basis to challenge any constitutionality of the law in this forum. This is not the proper forum.... I have no authority to decide any type of constitutional issues." (DOAH hearing Tr. at 5–6.)

While defendants try to liken this case to those in which the court abstained under *Younger*, those cases can be distinguished. In *Trust and Investment Advisers, Inc. ("TIA") v. Hogsett*, the court found that plaintiff did not present sufficient evidence that the state tribunal was biased or had prejudged the controversy and the requirements of *Younger* were satisfied. *TIA*, 43 F.3d 290, 297 (7th Cir. 1994). In *Pincham v. Illinois Judicial Inquiry Board*, the court considered whether one of the *Younger* doctrine exceptions applied in case where plaintiff brought a § 1983 claim and sought to enjoin disciplinary proceedings by the state judicial inquiry board. *Pincham v. Illinois Judicial Inquiry Board*, 872 F.2d 1341, 1349 (7th Cir.1989). The court ultimately concluded that the bad faith exception did not apply. "Justice Pincham's allegations of selective prosecution ... fell short of providing a basis for a finding of bad faith or harassment, as they failed to specifically compare Pincham to others who had been involved in public speaking." *Pincham*, 872 F.2d at 1345. Furthermore, unlike in this case, that plaintiff "failed to establish ... that the Judicial Inquiry

Board and Courts Commission were 'using or threatening to use prosecutions, regardless of their outcome, as instrumentalities to suppress speech.' " *Id.* at 1349 (citations omitted). Here, as noted above, plaintiffs present evidence which paints a convincing picture of bad faith on the part of defendants.

Defendants suggest that to rule in Torres' favor would result in an open invitation to all those unhappy that they have been issued a citation to challenge the ticket in federal court, under the guise of a selective prosecution claim. However, *Younger* and its progeny attack this policy concern directly. Exceptions to *Younger* are found only in the rarest of instances; where the facts of the case are extraordinary, the degree of harm is substantial and the unavailability of redress in state court is crystal clear. By finding in favor of Torres at this stage, the court is simply utilizing that exception in a case whose facts require it's application.

Furthermore, it is important to remember the limited reach of the *Younger* doctrine. "Federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them ... abstention rarely should be invoked.' " *Barichello v. McDonald*, 98 F.3d 948, 954 (7th Cir.1996) *citing Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (citations omitted). The court finds that an exception to the *Younger* doctrine does exist in this case and as such, the court will not abstain from enjoining the state proceedings.

## II. Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must show: (1) no adequate remedy at law; (2) irreparable harm absent a preliminary injunction; and (3) likelihood of success or a better than negligible chance at success on the merits. *See Meridian Mutual Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). Upon such a showing, the court must balance the harm each party might

suffer should it grant plaintiff's motion and consider any effect on the public interest. *Id.* The court finds that plaintiff has met her burden to show each of these elements.

## A. Adequate Remedy at Law

First, it is clear that plaintiff has no adequate remedy at law. "The harm posed by bad faith prosecution is both immediate and great, and adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights." *Collins,* 807 F.2d at 98. As the court has noted above, plaintiff has presented evidence tending to show a bad faith prosecution by defendants. However, defendants maintain that because review of any adverse decision by the Department of Administrative Hearings ("DOAH") is available in the Illinois courts, Torres does have an adequate legal remedy. "An injunction will not be issued when the plaintiff has an adequate remedy at law, which he does if he can assert the ground on which he seeks an injunction as a defense to the very proceeding that the injunction would put a stop to." *W.C.M. Window Co. v. Bernardi,* 730 F.2d 486, 490 (7th Cir.1984). Torres will not be allowed to raise her bad faith prosecution argument in her defense at the ordinance violation hearing. (DOAH Hearing Tr. at 5–6.) As such, there is no way she can protect her constitutional right to be free from selective prosecution.

## B. Irreparable Injury

To have an irreparable injury, plaintiff must show evidence of "a threat to federally protected rights that cannot be remedied in the state prosecution." *Arkebauer v. Kiley,* 985 F.2d 1351, 1355 (7th Cir.1993). The harm to Torres, if the administrative hearing officer finds she violated the city ordinance is arguably minimal. Defendants contend that because this is essentially a littering violation, little stigma would attach from a finding of responsibility for Torres. She is at no risk of going to jail because of this ticket since DOAH administrative law officers cannot impose a penalty of imprisonment. *See* 65 ILCS 5/1–2. 1–4(5); Chicago Mun.Code § 2–14–040(10). Further, if Torres were to be found liable for the violation, she would have to pay a relatively small monetary fine. However, the costs of litigating this matter cannot be ignored. And while the court finds this argument persuasive on some level, it cannot ignore the well-settled rule that where plaintiffs alleges sufficient facts to support a claim of bad faith prosecution, irreparable harm has been shown. *Collins,* 807 F.2d at 98.

## C. Likelihood of Success

Torres has also established the likelihood that she would succeed on the merits of her case. In her § 1983 suit, she alleges that defendants have enforced these municipal ordinances against her as part of a campaign of harassment and in retaliation for her running against Defendant Frias. The Constitution prohibits a state from imposing sanctions on an individual for exercise of her First Amendment rights. *See Mt. Healthy City School District Bd. of Education v. Doyle,* 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). This prohibition includes protection of plaintiff's freedom to engage in political activity. *See Grossart v. Dinaso,* 758 F.2d 1221, 1229 (7th Cir.1985) and *Bays v. Edgar,* No. 87 C 5045, 1988 WL 13639, at *3–4 (N.D.Ill. Feb. 17, 1988). The only form of selective prosecution actionable under the federal Constitution "is where the decision to prosecute is made either in retaliation for the exercise of a constitutional right ... or because of membership in a vulnerable group." *Esmail v. Macrane,* 53 F.3d 176, 179 (7th Cir.1995). Therefore, if Torres can present evidence that she was vindictively prosecuted simply because she ran against Frias, she will likely be successful under her § 1983 claim.

To prevail on a selective prosecution claim, plaintiff must prove that the "action taken by the state ... was a spiteful effort to 'get' him for reasons wholly

unrelated to any state objective." Plaintiff must offer "proof that the cause of the differential treatment ... was a totally illegitimate animus toward the plaintiff by the defendant." *Olech v. Village of Willowbrook,* 160 F.3d 386, 387 (7th Cir.1998). As noted earlier, the fact that only Frias' opponents were prosecuted for violations of the sign posting provision, the existence of other candidates' campaign signs on City property within the 12th Ward and the other allegations Torres has made suggest that she was issued a citation for no other reason than that she challenged one of the defendants in an election.

### D. Balance of Private Party Interests and Public Interest

■ Defendant has presented no evidence to counter the significant constitutional harms Torres will face absent a preliminary injunction. As such, a balancing of the harms faced by both parties upon entry of the injunction suggests that the scale does indeed tip in Torres' favor. Defendants maintain that a ruling in Torres' favor would essentially prevent the City from enforcing its ordinances and interfere with the City and Illinois courts' ability to adjudicate the appropriateness of this enforcement. They claim that in so doing, this court would be placed in the "unfamiliar role of deciding the appropriateness of municipal ordinance violations." In hearing Torres' claim, this court would not be deciding the appropriateness of the municipal ordinance violation, it would be deciding whether prosecution of the alleged municipal ordinance violation was in contravention with the United States Constitution. This is a task this court is well-qualified to perform. To the extent that defendants have abused the system of municipal laws and violated the Torres' constitutional rights to such a degree that no remedy at law is available, it is precisely within this court's jurisdiction to assess her claim to an equitable remedy.

### Conclusion

Therefore, the court will grant plaintiff's motion for a preliminary injunction [2–1] and enjoin defendant from prosecuting Torres until after the resolution of the matters raised in her complaint.