THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER OWENS, Defendant-Appellant.

First District (4th Division)   No. 1—93—0955

Opinion filed December 29, 1994.

---

[1]Justice Johnson participated in the disposition of this case prior to his retirement.

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

Mark J. Heyrman, of Mandel Legal Aid Clinic, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Robert F. Hogan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

In 1986, the defendant, Christopher Owens, was charged with aggravated criminal sexual assault. He was subsequently found not guilty by reason of insanity and committed to the custody of the Illinois Department of Mental Health and Developmental Disabilities at the Elgin Mental Health Center. In 1992, the defendant filed a motion to modify his treatment plan to include unaccompanied, on-grounds passes. In this motion, he also requested an independent psychiatric examination. The motion was denied. The defendant now appeals the denial of his motion, asking this court to remand this matter for a hearing to review the adequacy of his treatment and his petition. After reviewing the record in this matter, we affirm the decision of the trial court.

The defendant raises five issues in this appeal to support his basic contention that it was error to deny his petition for modification of treatment plan without a hearing. Before we address these issues, however, it is helpful to examine the statute which controls our decision.

## STATUTORY FRAMEWORK

■ In asking us to review this matter, the defendant refers us to both the Unified Code of Corrections (730 ILCS 5/1—1—1 et seq. (West 1992)) and the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—101 et seq. (West 1992)). However, the review of treatment plans of defendants found not guilty by reason of insanity is subject only to the provisions of section 5—2—4 of the Unified Code of Corrections. (People v. Reed (1984), 126 Ill. App. 3d 1020, 1023, 467 N.E.2d 1158, 1160; see also 730 ILCS 5/5—2—4(k) (West 1992) ("In the event of a conflict between this Section and the Mental

Health and Developmental Disabilities Code ***, the provisions of this Section shall govern"); 405 ILCS 5/3—814 (West 1992).) Consequently, the Mental Health and Developmental Disabilities Code does not affect our resolution of this issue and we therefore decline to consider the provisions of this code any further. We instead must confine our analysis to examining the provisions of section 5—2—4 of the Unified Code of Corrections. 730 ILCS 5/5—2—4 (West 1992).

When faced with the need to determine the meaning and limits of a statutory provision, our responsibility is to ascertain and give effect to the legislative intent behind the statute. (*People v. Hampton* (1983), 121 Ill. App. 3d 273, 275, 459 N.E.2d 985, 987.) The terms of the statute should be consulted first. *Hampton*, 121 Ill. App. 3d at 275, 459 N.E.2d at 987.

Keeping these principles in mind, we turn now to section 5—2—4 of the Unified Code of Corrections, entitled "Proceedings after acquittal by reason of insanity." (730 ILCS 5/5—2—4 (West 1992).) In three provisions, sections 5—2—4(b), 5—2—4(d), and 5—2—4(e), this statute establishes three different circumstances in which the court reviews and modifies the treatment plan of a defendant found not guilty by reason of insanity. Contrary to the defendant's arguments, however, the right to a hearing only attaches in two of these circumstances. We examine each provision in turn.

SECTION 5—2—4(b) OF THE UNIFIED CODE OF CORRECTIONS

Section 5—2—4(b) controls the situation in which the court reviews a treatment plan. (730 ILCS 5/5—2—4(b) (West 1992).) This section directs that a defendant found not guilty by reason of insanity shall not be permitted in the community, except to the extent that a treatment plan allows. The remainder of the statute provides:

> "Not more than 30 days after admission and every 60 days thereafter so long as the initial order remains in effect, the facility director shall file a treatment plan with the court. Such plan shall include an evaluation of the defendant's progress and the extent to which he is benefiting from treatment. Such plan may also include unsupervised on-grounds privileges, off-grounds privileges (with or without escort by personnel of the Department of Mental Health and Developmental Disabilities), home visits and participation in work programs, but only where such privileges have been approved by specific court order, which order may include such conditions on the defendant as the Court may deem appropriate and necessary to reasonably assure the defendant's satisfactory progress in treatment and the safety of the defendant and others." 730 ILCS 5/5—2—4(b) (West 1992).

Significantly, although section 5—2—4(b) directs that the treatment plan may only be changed by court order, at no point does this provision grant the defendant a right to a hearing when he requests a change in his treatment plan.

## SECTION 5—2—4(d) OF THE UNIFIED CODE OF CORRECTIONS

However, pursuant to section 5—2—4(d), the defendant is entitled to a hearing where the director of a facility requests certain changes in the defendant's commitment. Section 5—2—4(d) states:

"(d) When the facility director determines that:

(1) the defendant is no longer subject to involuntary admission or in need of mental health services on an inpatient basis; and

(2) the defendant may be conditionally released because he or she is still in need of mental health services or that the defendant may be discharged as not in need of any mental health services; or

(3) the defendant no longer requires placement in a secure setting; the facility director shall give written notice ***. *** Within 30 days of the notification by the facility director, the Court shall set a hearing and make a finding ***." 730 ILCS 5/5—2—4(d) (1992).

This provision of the statute therefore directs that the court must provide a hearing where the facility director requests, on behalf of the defendant, release, conditional discharge or transfer to a nonsecure setting.

## SECTION 5—2—4(e) OF THE UNIFIED CODE OF CORRECTIONS

Section 5—2—4(e) also defines an additional instance where an individual found not guilty by reason of insanity possesses a right to a hearing. The relevant language of section 5—2—4(e) states:

"(e) A defendant admitted pursuant to this Section, or any person on his behalf, may file a petition for transfer to a non-secure setting within the Department of Mental Health and Developmental Disabilities or discharge or conditional release under the standards of this Section in the court which rendered the verdict. Upon receipt of a petition for transfer to a non-secure setting or discharge or conditional release, the court shall set a hearing to be held within 30 days." 730 ILCS 5/5—2—4(e) (West 1992).

Therefore, when the defendant requests release, conditional discharge or transfer to a nonsecure setting, the defendant is entitled to a hearing on the petition.

SUMMARY OF THE PROVISIONS OF SECTION 5—2—4

■ After reviewing the provisions of this statute, certain conclusions become evident. Only when the director of a facility or the defendant is seeking release, conditional discharge or transfer to a nonsecure setting does the right to a hearing attach. (730 ILCS 5/5—2—4(d), (e) (West 1992).) Under this statute, however, a defendant seeking modification of his treatment plan to include unsupervised on-grounds passes, pursuant to section 5—2—4(b), is not entitled to a hearing.

In those instances when a defendant is given the right to a hearing, section 5—2—4(f) outlines the kinds of procedures which should be followed. (730 ILCS 5/5—2—4(f) (West 1992).) *People v. Reed* (1984), 126 Ill. App. 3d 1020, 467 N.E.2d 1158, cited by the defendant in this case, discussed the application of section 5—2—4(f). The *Reed* court concluded that where an action was initiated under section 5—2—4(d), the defendant was entitled to a hearing and all of the protections outlined in section 5—2—4(f). See also *People v. Bledsoe* (1994), 268 Ill. App. 3d 869.

Having established the requirements outlined in the statute, we turn now to a discussion of the issues raised by the defendant.

## DISCUSSION

The first issue we must address is whether the trial court erred in denying the defendant's motion to review and modify treatment without a hearing.

■ This matter began with a petition filed by the defendant to review and modify his treatment plan. The defendant's petition states, "Respondent, Christopher Owens, hereby moves this Court *** to review his treatment plan and to modify said plan to provide him with: unaccompanied on-grounds passes." Because the defendant initiated the petition and because he seeks on-grounds passes and not release, conditional discharge or transfer to a nonsecure setting, this section is controlled by section 5—2—4(b). This provision of the statute does not grant the defendant a right to a hearing on his petition for modification of treatment plan.

The defendant contends that *People v. Reed* (1984), 126 Ill. App. 3d 1020, 467 N.E.2d 1158, resolved any ambiguity which might be found in the language of section 5—2—4. The defendant argues further that *Reed* held that proposals for on-grounds passes should be treated the same as proposals for discharge, conditional release and transfer to a nonsecure setting.

In rejecting this argument, we first note that there is no ambiguity in the language to resolve. The statute allows for hearings only when a defendant or the director of a facility petitions for transfer,

discharge or conditional release. Second, despite the defendant's contention otherwise, *Reed* never held that proposals for on-grounds passes should be treated like proposals for discharge, conditional release or transfer to a nonsecure setting. Instead, the *Reed* court stated that, where the director of a facility requests on behalf of the defendant a transfer to a nonsecure setting, conditional discharge or release, the burden of proof is on the director.

●4 The second issue raised by the defendant is whether the trial court erred when it provided its opinion that any errors the Department of Mental Health and Developmental Disabilities might make concerning recommending unsupervised on-grounds passes would favor the defendant.

The proceedings conducted on the defendant's petition for modification of treatment plan were conducted on February 5, 1993. At that time, the trial judge read the following notation from the latest report in his possession:

> " 'Continued hospitalization is required because of the following: Mr. Owens is stabilizing emotionally, but remains floridly psychotic and without insight into the crime or illness. He remains dangerous.' "

The trial court "respectfully" denied the defendant's request for modification.

Following this exchange, the defendant asked the trial court, "So I won't be given unaccompanied pass[es]?" The trial court then explained to the defendant:

> "[The Department of Mental Health and Developmental Disabilities is] more than happy to move people toward release, towards a situation where they may be released than not because they are under the same constraints and problems that the Illinois Department of Corrections is under, that being a crowded situation and lack of funds, so I am sure that they will be monitoring the situation and if it is not to your liking, you know your options and you have utilized them in the past and you may file a request for another hearing."

The defendant argues that this comment of the trial court was improper. The defendant contends that the statement was irrelevant, factually incorrect and not the type of fact of which a court may take judicial notice. We agree that the comment was irrelevant and find that it did not affect the defendant's rights under the statute.

As previously discussed, section 5—2—4(b) is applicable in this context. That section requires the court to approve treatment plans of any defendant found not guilty by reason of insanity. (730 ILCS 5/5—2—4(b) (West 1992).) In this case, the trial court reviewed the treatment plan before it and concluded that the current plan, which

did not include unsupervised on-grounds passes, was proper. Therefore, he respectfully denied the defendant's request to augment the plan to include on-grounds passes.

This conduct is all that is required of the trial court under section 5—2—4(b). The explanation provided by the trial court to the defendant was merely superfluous discussion and did not serve to enhance the court's decision. Therefore, although we have carefully considered the remainder of the defendant's arguments, we find no error was committed by the trial court.

■ The third issue raised by the defendant is whether the trial court erred in denying the defendant's motion without ordering an independent psychiatric examination. As support for his argument, the defendant cites section 5—2—4(f).

Section 5—2—4(f) sets out the proceedings to be followed when an individual acquitted by reason of insanity is to have a hearing. These proceedings include providing an independent psychiatric examination, the report of which is to be read *at the hearing*. (See *e.g.*, *People v. Bledsoe* (1994), 268 Ill. App. 3d 869 (where the court held that a defendant who petitioned for discharge or conditional release under section 5—2—4(e) had a right to an independent psychiatric examination); see also *Reed*, 126 Ill. App. 3d at 1023, 467 N.E.2d at 1160.) It is logical to conclude, therefore, that the right to an independent psychiatric examination is tied to the right to have a hearing. Because the defendant petitions for modification of his treatment plan pursuant to section 5—2—4(b), the defendant does not have a right to a hearing. We must conclude, then, that section 5—2—4(f) does not apply to this instance and the defendant also does not have a right to an independent psychiatric examination.

❋6 The fourth issue is whether the defendant was denied effective assistance of counsel. The defendant argues that defense counsel violated the standard established for effective assistance of counsel in mental health cases because he did not act as an advocate for the defendant's motion.

"The standard of review for judging a claim of ineffective assistance of counsel is whether counsel's representation is so constitutionally deficient that it produced substantial prejudice to defendant without which the result would probably have been different." (*People v. Williams* (1986), 140 Ill. App. 3d 216, 228, 488 N.E.2d 649, 657.) The defendant must establish both trial counsel's incompetency and the prejudice that resulted from that incompetency. *Williams*, 140 Ill. App. 3d at 228, 488 N.E.2d at 657.

We have reviewed the record in this case and conclude that defense counsel acted properly and effectively assisted the defendant. Defense counsel's decision to not ask the court for an independent

psychiatric examination or request a hearing appears to us to be simply a recognition of the limitations inherent in the statute controlling review of this case. It is not, as the defendant contends, a failure of defense counsel to competently represent his client.

Moreover, even if the defendant could establish that counsel was incompetent, he cannot show that counsel's representation prejudiced the outcome of the case. As required by the statute, the court reviewed the latest treatment plan for the defendant in the court's possession. That plan stated that the defendant remained "floridly psychotic." Based on this language, the court denied the defendant's request for on-grounds passes. No amount of zealous advocacy on the part of defense counsel could change this result.

●7 The fifth issue raised is whether the defendant was denied due process of law. The defendant argues that on-grounds passes can only be issued with the prior approval of the court but the Department of Mental Health has adopted a policy of never requesting on-grounds passes. The defendant further contends that, because the defendant must always initiate a request for passes, the failure of the trial court to consider his request for passes "solely because the Department did not recommend those passes" denied the defendant due process.

We note several errors with this argument. First, there is nothing in the record to support the defendant's contention that the Department of Mental Health and Developmental Disabilities has adopted a policy of never requesting on-grounds passes. The defendant cites to *Nelson v. Murphy* (N.D. Ill. September 30, 1992), No. 90—C—3920, as support for this proposition. We cannot accept *Nelson v. Murphy*, the unreported findings of a magistrate judge, as authority supporting the defendant's argument.

More importantly, there is no indication in the record that the court denied the defendant's request "solely" because the Department did not support his request. Rather, the court denied the defendant's request because the treatment plan indicated that the defendant remained "floridly psychotic" and was a danger to the community.

## CONCLUSION

For the above reasons, we affirm the decision of the trial court to refuse to modify the treatment plan to include unsupervised on-grounds passes.

Affirmed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.