THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES CHIAKULAS, Defendant-Appellant.

First District (4th Division)   No. 1—96—2169

Opinion filed May 1, 1997.

Edwin F. Mandel Legal Aid Clinic, of Chicago (Mark J. Heyrman, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

This is an appeal by defendant, Charles Chiakulas, who has been confined at the Elgin Mental Health Center (Elgin) of the Illinois Department of Mental Health and Developmental Disabilities (Department) since being found not guilty of aggravated battery (720 ILCS 5/12—4 (West 1992)) and attempted murder (720 ILCS 5/8—4, 9—1 (West 1992)) by reason of insanity (NGRI). After the trial court denied defendant's motion to review his treatment plan, he appealed. He asserts that the trial court denied him statutorily guaranteed treatment when it refused to review his treatment plan or to order an independent psychiatric examination. For the following reasons, we reverse and remand.

The main issue on appeal is whether an NGRI acquittee has the right to have his or her treatment plan reviewed by the court. Defendant asserts that section 5—2—4(b) of the Unified Code of Corrections (730 ILCS 5/5—2—4(b) (West 1994)), read together with section 3—814 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3—814 (West 1994)) and the legislative history of section 5—2—4(b), provides that the trial court has a duty to review his treatment plan.

In April 1996, the Elgin director, Nancy Staples, filed a treat-

ment plan with the circuit court. Because defendant found the treatment plan to be deficient, he filed a motion asking the court to review his treatment plan, to require the facility director to modify the plan to conform with the statute's requirements, and to order an independent psychiatric examination. Defendant argued that the treatment plan failed to provide an evaluation of his progress or to state the extent to which he was benefiting from treatment. He also contended that an independent psychiatric examination was necessary because the facility director's report indicated that he was not making any progress. The State argued that the Department had fulfilled its statutory obligations and voiced concerns that the court would become a micromanager of the Department if it granted defendant's motion.

The trial court refused to review defendant's treatment plan. The following order was entered:

"This matter coming before the court pursuant to a Motion for Review of Treatment Plan. It is hereby ordered that [ ] motion is hereby denied and this matter shall be taken from the call."

The State argues that defendant's request for a review and modification of his treatment plan is controlled solely by section 5—2—4(b), which does not grant him the right to a hearing on his motion. Further, the State contends that the legislative history of section 5—2—4 indicates that the only purpose of the statute was for the trial court to be apprised or notified of a defendant's current condition while receiving treatment.

The State relies on *People v. Owens*, 269 Ill. App. 3d 152, 154, 645 N.E.2d 483 (1994), which involved the defendant's motion for a modification of treatment to include unsupervised on-grounds privileges. The reviewing court affirmed the judgment of the trial court, which had reviewed the defendant's treatment plan and concluded that no change was necessary in order to provide unsupervised on-grounds privileges. *Owens*, 269 Ill. App. 3d at 158-60. *Owens* involved that part of section 5—2—4(b) that provides:

"[T]he defendant shall not be permitted to be in the community in any manner, including *** unsupervised on-grounds privileges, discharge or conditional or temporary release, except by a plan as provided in this Section." 730 ILCS 5/5—2—4(b) (West 1994).

The court stated that section 3—814 of the Mental Health Code (405 ILCS 5/3—814 (West 1994)) was not involved and only section 5—2—4(b) of the Unified Code of Corrections was involved.

*Owens* is distinguishable because that portion of section 5—2—4(b) is not part of this case. Therefore, *Owens* is not dispositive to the issues here. We agree that if only unsupervised on-grounds privi-

leges, discharge or conditional or temporary release is involved, then only section 5—2—4(b) governs.

■ We must first decide which statute applies in this case. The primary objective of statutory interpretation is to give effect to the legislature's intent. *People v. Lowe*, 153 Ill. 2d 195, 201, 606 N.E.2d 1167 (1992). First, the court considers the statute's language, which is the best expression of the legislature's intent. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 382, 620 N.E.2d 1070 (1993); *Lowe*, 153 Ill. 2d at 201. If the statutory language is somewhat ambiguous, courts can examine legislative history and remarks made by the legislators during the debate on the legislation. *Superior Structures Co. v. City of Sesser*, 277 Ill. App. 3d 653, 663, 660 N.E.2d 1362 (1996). The entire statute must be considered, along with the subject addressed and the legislature's objective in enacting the statute. *Superior Structures Co.*, 277 Ill. App. 3d at 663.

■ Section 5—2—4(b) provides in part:

"If the Court finds the defendant subject to involuntary admission ***, the admission, detention, care, treatment or habilitation, *review proceedings*, and discharge of the defendant after such order shall be under the Mental Health and Developmental Disabilities Code, except that the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time. *** Not more than 30 days after admission and every 60 days thereafter so long as the initial order remains in effect, the facility director shall file a treatment plan with the court. Such plan shall include an evaluation of the defendant's progress and the extent to which he is benefiting from treatment." (Emphasis added.) 730 ILCS 5/5—2—4(b) (West 1992).

Section 3—814 of the Mental Health Code provides:

"Not more than 30 days after admission under this Article, the facility director shall file a current treatment plan with the court which includes an evaluation of the recipient's progress and the extent to which he is benefiting from treatment. *The court shall review the treatment plan.* If the recipient has been ordered committed to the facility after he has been found not guilty by reason of insanity, the treatment plan and its review shall be subject to the provisions of Section 5—2—4 of the Unified Code of Corrections. The court may order any public agency, officer, or employee to render such information, cooperation, and assistance as is within its legal authority and as may be appropriate to achieve the objectives of this Section. The recipient or an interested person on his behalf may request a hearing or the court on its own motion may order a hearing to review the treatment plan. If the

court is satisfied that the recipient is benefiting from treatment, it may continue the original order for the remainder of the admission period. If the court is not so satisfied, it may modify its original order or it may order the recipient discharged." (Emphasis added.) 405 ILCS 5/3—814 (West 1994).

Further, section 5—2—4(k) of the Unified Code of Corrections provides:

"In the event of a conflict between this Section and the Mental Health and Developmental Disabilities Code ***, the provisions of this Section shall govern." 730 ILCS 5/5—2—4(k) (West 1994).

■ Given the unambiguous language of both statutes, we find that the two statutes complement, not conflict with, each other. Section 3—814 provides that an NGRI acquittee's treatment plan and its review shall be subject to the provisions of section 5—2—4, and section 5—2—4 provides that the review proceedings of an NGRI acquittee shall be under the Mental Health Code. This indicates that the statutes are inclusive, not exclusive. Moreover, there are no conflicting provisions in the two statutes.

Read together and harmonized, the plain language of the two statutes provides that, every 60 days, the facility director shall file with the court a treatment plan, which shall include an evaluation of the defendant's progress and the extent to which he or she is benefiting from treatment. Generally, the word "shall" is regarded as indicative of mandatory intent. *People v. Singleton*, 103 Ill. 2d 339, 341, 469 N.E.2d 200 (1984); *People v. Bledsoe*, 268 Ill. App. 3d 869, 872, 645 N.E.2d 411 (1994).

Both section 3—814 and section 5—2—4(b) require that the court review the treatment plan. Although section 5—2—4(b) does not elaborate, section 3—814 provides guidance to the court in monitoring the appropriateness and effectiveness of the treatment. In its review of the treatment plan, the court may, in its discretion, order any public agency, officer, or employee to render appropriate information, cooperation, and assistance. Further, the court has the discretion to order a hearing to review the treatment plan. If satisfied that the recipient is benefiting from treatment, the court may continue the original order for the remainder of the admission period, or if not satisfied, it may modify its original order or order the defendant to be discharged. 405 ILCS 5/3—814 (West 1994).

Further, the legislative history of section 5—2—4 supports this analysis. It indicates that the two statutes interface to mandate an individualized treatment plan and periodic evaluation of the defendant's progress, both of which are to be reviewed by the court. The *Report, Governor's Commission for Revision of the Mental Health*

*Code of Illinois* (hereinafter Report), on which Illinois courts regularly rely as a primary source for legislative history of mental health legislation (*Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 505-06, 520 N.E.2d 37 (1988); *Bledsoe*, 268 Ill. App. 3d at 872), commented on section 5—2—4(b) as follows:

> "[T]his new law, in its interface with the *** Mental Health and Developmental Disabilities Code *** mandates an individualized treatment plan and periodic evaluation of progress both of which are reviewed by the court. These steps ensure that the acquittee will be provided with an integrated treatment regimen consistent with his needs and that the court is apprised of the acquittee's current condition. They also prevent an acquittee from becoming lost in the mental health and court systems. *** In this way the court can monitor the progress of treatment and be fully informed of significant changes in the condition of the acquittee." *Report*, at 48.

Accordingly, we conclude that the two statutes, read together, require the trial court to review a defendant's treatment plan. When requested by any party, the court should make a pronouncement that it has reviewed the plan. In addition, the court may request assistance from a public agency, officer, or employee to answer questions regarding the treatment plan and may hold a hearing.

Notwithstanding, there is nothing in either statute that gives an NGRI acquittee the right to a hearing on his or her treatment plan. That right to a hearing exists only when the facility director or acquittee is seeking release, conditional discharge, or transfer to a nonsecure setting. *Owens*, 269 Ill. App. 3d at 157-59. Whether or not to hold a hearing is in the trial court's discretion in this case.

■ The next issue is whether defendant has the right to an independent psychiatric examination. Defendant argues that he is entitled to such an examination because it is necessary to evaluate the adequacy of his treatment plan.

We disagree. A defendant's right to an independent psychiatric examination is tied to the right to a hearing. Because defendant does not have the right to a hearing in this case, there is no corresponding right to an independent psychiatric examination. That does not mean, however, that the court does not have the statutory authority to order such an examination. If the court thinks that such an examination is necessary, it has the discretion to order that examination.

■ Finally, defendant maintains that the trial court's concluding statements regarding the Department were improper because they were subjective, speculative, and assumed the very facts that a hearing would have determined. Thus, defendant claims that the court

precluded him from proving that his treatment fell below the statutory standard.

Moreover, defendant asserts that the trial court used an improper legal standard when it declared that the Department was doing "the best they can with what they've got." Defendant argues that nothing in either the Mental Health Code or the Unified Code of Corrections suggests that the "adequate and humane care" required by section 2—102(a) of the Mental Health Code should be determined by the amount of resources available to the Department.

In its concluding remarks, the trial court stated:

"But I sincerely believe that what I said earlier is, in fact, correct, that it is in their best interests *** in the Department of Mental Health's best interests to do the best that they can with what they've got, and I think—I sincerely believe that they do that with each and every patient that they—that is in their care and custody."

A similar issue arose in *Owens*, 269 Ill. App. 3d at 158, where the trial court explained:

"[The Department is] more than happy to move people toward release, towards a situation where they may be released than not because they are under the same constraints and problems that the Illinois Department of Corrections is under, that being a crowded situation and lack of funds, so I am sure that they will be monitoring the situation and if it is not to your liking, you know your options and you have utilized them in the past and you may file a request for another hearing."

The *Owens* defendant argued that the comments were improper because they were irrelevant, factually incorrect, and incapable of judicial notice. *Owens*, 269 Ill. App. 3d at 158. The reviewing court agreed that the comments were irrelevant, but found that they did not affect the defendant's rights under the statute because they were "merely superfluous discussion and did not serve to enhance the court's decision." *Owens*, 269 Ill. App. 3d at 158-59. Similarly, in this case, the trial court's comments were irrelevant, superfluous, and did not affect defendant's rights.

■ We hold that the circuit court must review an NGRI acquittee's treatment plan and when requested should make a pronouncement, in an order, that it has reviewed the plan. We further hold that an NGRI acquittee does not have a right to a hearing to modify the treatment plan, but the court does have discretion to grant a hearing and order an independent psychiatric examination when it deems it necessary.

For the foregoing reasons, we reverse the circuit court judgment

and remand this cause for further proceedings consistent with this decision.

Reversed and remanded.

WOLFSON, P.J., and BURKE, J., concur.