SECOND DIVISION

December 28, 2001

No. 1-00-2084

THE PEOPLE OF THE STATE OF ILLINOIS ) Appeal from the

) Circuit Court of 

Plaintiff-Appellee, ) Cook County.

)

v. )

)

CORA MARKWART, GUARDIAN, ex rel. ) The Honorable

JOHN MARKWART, ) Stuart Palmer,

) Judge Presiding.

Defendant-Appellant. )

JUSTICE GORDON delivered the opinion of the court:

In 1996, John Markwart (defendant) was found not guilty by reason of insanity of aggravated arson in a bench trial before the circuit court
 of Cook County.  He was then committed to the custody of the Illinois Department of Human Services pursuant to section 5-2-4 of the Unified Code of Corrections.  730 ILCS 5/5-2-4 (West 2000).  In April 2000, defendant sought review of the treatment plan report filed by the mental health facility housing him, alleging that the plan did not comply with governing statutes.  
Defendant also sought review of his treatment at that facility, alleging that it was not adequate.  The circuit court held that the existing plan complied with the statute and denied defendant's request for a hearing to review his actual treatment.  Defendant appeals the circuit court's rulings, claiming that the finding that the plan was adequate is against the manifest weight of the evidence and that the hearing requested is mandatory and not within the discretion of the circuit court to deny.  For the reasons discussed below, we affirm.  

BACKGROUND

In August 1995, defendant was charged with aggravated arson for setting on fire a desk at Cook County Hospital.  According to testimony given during defendant's bench trial, defendant approached the desk of a hospital employee, poured liquid on it from a jar and then lit the desk on fire.  At trial, the parties stipulated that if a detective from the Chicago Police Department Bomb and Arson Unit were to have testified, he would have stated that the fire in question caused structural damage and was intentionally set.  The detective would also have testified that defendant told him that he set the fire because he was dissatisfied with the psychiatric treatment he was receiving at Cook County Hospital.  The defense presented the testimony of Dr. Stafford Henry, a forensic psychologist, who performed a psychiatric evaluation of defendant and concluded that defendant was suffering from schizophrenia and was legally insane at the time the fire was set.  The trial court found that the State proved all the elements of the crime beyond a reasonable doubt but further found that the defense proved, by clear and convincing evidence, that  defendant was legally insane at the time of the crime.  The court then found defendant not guilty by reason of insanity.  

From his acquittal in December 1996, until the present, defendant has been in the custody of the Department of Human Services at the Elgin Mental Health Center.  During this period, Cora Markwart was appointed legal guardian of her son, defendant, pursuant to section 11a-1 et seq. of the Probate Act and pursued these proceedings on his behalf.  755 ILCS 5/11a-1 (West 2000).

Under section 5-2-4 of the Unified Code of Corrections, the facility housing a defendant acquitted by reason of insanity must file a treatment plan report with the court every 60 days during the defendant's confinement.  730 ILCS 5/5-2-4(b) (West 2000).  The report Elgin filed in February 2000, is at issue in this case.  According to the contents of this report, defendant suffers from delusions, including the notion that he has an increased sensitivity to pain.  These delusions led defendant to demand that Cook County Hospital perform "$3,000" worth of tests on him and their refusal to accede to this apparently psychotic demand led defendant to set the fire at that location.  According to the treatment plan report, in February 2000, defendant was still actively delusional.  In 1999, the report states that defendant experienced a period of anorexia, his weigh dropping to 127 pounds, during which he claimed that starving himself would get him out of Elgin "sooner than later."  Through the administration of medication and court approved electroconvulsive therapy (ECT), defendant's weight was raised to 179 pounds, but Elgin staff apparently still strictly monitored defendant's eating and his efforts to sell his food.  The report also indicates that defendant manifested significant problems with social skills and personal hygiene.  The report reveals that defendant's primary form of treatment is anti-psychotic medications.  Apparently, the treating psychiatrist has tried a number of different medications, the one in use in February 2000, offering only moderate success in limiting defendant's delusion.

In addition, the June 2000, treatment plan report, submitted during the course of this litigation, indicates that defendant followed a nurse into a restricted area, would not leave, and when set on by another patient coming to the nurse's aid, bit the other patient, drawing blood.  Defendant then went on a medications strike which was eventually resolved.

In April 2000, defendant filed a petition for review of treatment alleging that his February 2000, treatment plan did not conform to the statutory requirements set out in sections 3-209 and 3-814 of the Mental Health and Developmental Disabilities Code (Mental Health Code).  405 ILCS 5/3-209 and 5/3-814 (West 2000).  Defendant asked that the court enter an order requiring Elgin to submit a revised treatment plan.  Defendant also requested a hearing to determine whether he was receiving adequate and humane care and services under his treatment plan as defined in section 1-101.2 of the Mental Health Code.  405 ILCS 5/1-101.2 (West 2000).  On defendant's first request, the trial court reviewed the treatment plan and concluded that it was adequate and necessary for defendant's condition.  Upon the trial judge's ruling, defendant reiterated his request for a hearing on the adequacy of his treatment and requested that an independent psychiatric exam be performed as part of that review.  The trial court denied defendant's petition, stating "[a]t its discretion the Court denies that request."  This appeal followed.

ANALYSIS

By his first issue, defendant argues that the trial court erred in finding that the treatment plan submitted by the Elgin Mental Health Center was adequate.  Defendant contends that the plan failed to articulate several of the statutorily mandated elements and those it did include were facially inadequate.  Although no case directly addresses the standard of review of a trial court's holdings on a treatment plan, defendant and the State agree that the applicable standard of review is whether the finding was against the manifest weight of the evidence.  See, 
e.g.,
 
Whyte v. Estate of Whyte
, 244 Ill. App. 3d 746, 748, 614 N.E.2d 372, 373 (1993) (trial court's ruling that previously void marriage became lawful would only be disturbed if it were against the manifest weight of the evidence). 

Defendant's right to challenge the facial adequacy of his treatment plan is outlined in the inter-referential subsections of the two statutes governing his confinement: section 5-2-4 of the Unified Code of Corrections and section 3-814 of the Mental Health Code.  730 ILCS 5/5-2-4 (West 2000); 405 ILCS 5/3-814 (West 2000).  Defendant was committed to Elgin, after being found not guilty by reason of insanity (NGRI), under section 5-2-4 of the Unified Code of Corrections.  730 ILCS 5/5-2-4(a) (West 1996).  This section provides detailed directions about the process of commitment in such cases, the reporting requirements of the treatment facility, and the rights to and procedures for review of certain aspects of a defendant's confinement.  Part (b) of this section also provides that 

"[i]f the Court finds the defendant subject to involuntary admission or in need of mental health services on an inpatient basis, the admission, detention, care, treatment or review of treatment and treatment plans, and discharge of the defendant after such order shall be under the Mental Health and Developmental Disabilities Code."  730 ILCS 5/5-2-4(b) (West 2000).  

Under that code, section 3-814(c) states that "[o]n request of the recipient or an interested person on his behalf, or on the court's own discretion, the court shall review the current treatment plan to determine whether its contents comply with the requirements * * *.  If the court determines that any of the information required by this Section * * * to be included in the treatment plan is not in the treatment plan * * * the court shall indicate what is lacking and order the facility director to revise the current treatment plan to comply with this Section."  405 ILCS 5/3-814(c) (West 2000).  Thus section 5-2-4(b), by incorporating section 3-814, allows a defendant to make a facial challenge to his treatment plan and request that a complying plan be submitted by the treating facility.

Section 5-2-4(b) of the Unified Code of Corrections dictates that such a treatment plan report must be submitted by the treating mental health facility every sixty days during the duration of the defendant's involuntary confinement.  730 ILCS 5/5-2-4(b) (West 2000).  This section also states the required contents of the treatment plan report.  The treatment plan report shall include:

"an opinion as to whether the defendant is currently subject to involuntary admission, in need of mental health services on an inpatient basis, or in need of mental health services on an outpatient basis.  The report shall also summarize the basis for those findings and provide a current summary of the following items from the treatment plan: (1) an assessment of the defendant's treatment needs, (2) a description of the services recommended for treatment, (3) the goals of each type of element of service, (4) an anticipated timetable for the accomplishment of goals, and (5) a designation of the qualified professional responsible for the implementation of the plan."  730 ILCS 5/5-2-4 (West 2000).

Defendant argues that on its face the February 2000, plan fails to adequately outline these requirements and that based upon these obvious defects the trial judge should have ordered Elgin to submit a revised plan. 

Defendant's underlying concern in forwarding these arguments centers on the fact that these reports are used by non mental-health professionals—the defendant, his attorney, the State's attorney, and the trial judge—to evaluate the adequacy, humaneness, and duration of his confinement.  If these reports contain nothing but vague and overbroad generalizations about defendant's care, then defendant and the courts have no way to assess the care given by Elgin, nor any way to assess whether defendant's continued involuntary commitment is appropriate.  While we recognize the cogency of defendant's concerns, and in small part share his apprehensions about the level of specificity provided in the treatment plan at issue, we find that the trial court's assessment that the report was adequate under the statute was not against the manifest weight of the evidence. 

Going through defendant's contentions point by point, he first asserts that the treatment plan does not set forth information from which the basis for his confinement can be determined.  Defendant argues that the plan assumes that he is in need of mental health services on an inpatient basis, but fails to articulate whether he is a current danger to himself or others.  Defendant goes on to note that many individuals diagnosed with schizophrenia are treated in the community, not in a mental hospital, and that Elgin's report provides no reason why such treatment cannot be pursued in his case.  

The State counters that the report states that defendant is actively psychotic and continues to suffer from the same delusions that led him to commit the crime which provided the basis for his initial confinement.  In addition, the report indicates that defendant is still working through a severe eating disorder, which initially caused him to drop to a dangerously low weight.  The report states that defendant continues to sell his food and to make statements such as "I hate food and shouldn't have to eat any of it."  Although not articulated in the exact language of the statute defining qualifications for commitment, we find that the trial court's reliance on these assessments of defendant's condition as the basis for his continued confinement is not against the manifest weight of the evidence. 

Defendant next argues that the treatment plan does not contain an assessment of his treatment needs.  The plan does, however, list five problems experienced by defendant and an indication of how Elgin is responding to each of them.  The plan indicates that defendant is still actively psychotic and is in the process of being treated with medication in an attempt to control his delusions.  Defendant is not complying with unit rules and staff are actively working to encourage greater compliance.  Defendant is not taking care of personal hygiene or his living quarters and again staff is working regularly with him on improvement in these areas.  Defendant is withdrawn and thus has been enrolled in a social skills program, which staff are encouraging him to regularly attend.  Finally, defendant continues to manifest problems with food and these are being addressed with medication and staff intervention.  These details provide sufficient information about defendant's treatment needs to support the trial court's finding that the plan is adequate in this area.

Likewise, defendant contends that the plan does not contain a description of the services recommended for treatment.  The plan does, however, indicate that defendant is being treated with anti-psychotic medication and an antidepressant.  Although the anti-psychotic drug is providing only minimal to moderate relief, the plan reveals that the facility is in midst of the not uncommon process of serially administering different medications in search of one that will alleviate defendant's delusions.  While medication appears to be the primary focus of treatment, the plan also indicates, as discussed above, that defendant's anorexia is being monitored and addressed by unit staff, that defendant is participating in a social skills program, and the he is being guided towards better personal hygiene.  While more detail about the specific plan Elgin has for treating defendant's several mental health issues might indeed have been edifying, we find that the trial court did not err in considering this portion of the plan to be adequate.

Finally, defendant contends that the report does not contain the goals of each type of element of service, the timetable for the accomplishment of the goals, nor the designation of the qualified professional responsible for the plan's implementation.  As to the last two, the plan does indeed provide a timetable for the achievement of the five objectives it outlines, and does list the staff member responsible for overseeing each of these objectives.  Under each objective is listed the "Staff Responsible" and the "Expected Achievement Date."  While defendant argues that the timetable does not correspond to the overall discharge date listed in the plan, we find that such a reading puts a greater exactitude on the report than it can reasonably be expected to bear.  The plan estimates the time that it will take for defendant to reach specific objectives and a later date for his ultimate discharge.  The discharge date may well be calculated to allow for defendant's failure to meet an objective by the deadline (for any variety of reasons) or to allow for a period of stability within the facility before defendant is discharged. 

On the question of the existence of goals themselves, the report provides an overlapping list of goals and objectives in two sections which focus on the control of delusions, compliance with routine expectations and rules of the unit, accomplishment of daily living and social skills, maintenance of weight, and development of a relapse prevention program and realistic aftercare program.  The latter two are listed as deferred goals, presumably because they depend on the primary goal of controlling defendant's delusions.  Again, although the report itself might provide a clearer single list of goals, Elgin's plan for defendant's rehabilitation is sufficiently clear that both his progress and Elgin's specific treatment efforts can be determined by those to whom the report is aimed, namely, defendant, his attorney, the State and the reviewing court.  Thus we find that the trial court's finding that the treatment plan as a whole is adequate is not against the manifest weight of the evidence.

Defendant next argues that the court erred in refusing to grant him a hearing to review the adequacy of his treatment and in refusing to order an independent psychiatric examination as a part of that hearing.  We disagree.

The issue presented here is whether defendant had a right to a hearing as a matter of law under the two governing statutes.  We will therefore review the trial court's holding 
de novo
.   
People v. O'Brien
, 197 Ill. 2d 88, 91, 754 N.E.2d 327, 329 (2001).
  
Because analysis of this issue depends upon the construction of recently amended statutes, we must also be cognizant of basic rules of statutory interpretation.  We begin our analysis with the language of the statute, giving it its plain and ordinary meaning.  
Davis v. Toshiba Machine Co., America
, 186 Ill. 2d 181, 184, 710 N.E.2d 399, 401 (1999).  Where the language is unambiguous, we will "apply the statute without resort to further aids of statutory construction."  
O'Brien
, 197 Ill. 2d at 90, 754 N.E.2d at 329.  
Nor will we read into it "exceptions, limitations, or conditions that the legislature did not express."  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 83, 630 N.E.2d 820, 823 (1994).

As an initial matter, we note that this issue differs from defendant's first issue in the substance of the request.  As section 3-814 indicates, involuntarily committed patients may challenge both their treatment plan and their actual treatment.  405 ILCS 5/3-814(c) & (d) (West 2000).
  At issue in defendant's appeal, are both these challenges.  The first, as discussed above, is a facial challenge to the plan based on allegations that it does not conform to the statutory requirements.  405 ILCS 5/3-814(c)
, 730 ILCS 5/5-2-4(b) (West 2000).  Specifically, section 814(c) states: "On request of the recipient * * * the court shall review the current treatment plan to determine whether its contents comply with the requirements of this Section * * * ."  405 ILCS 5/3-814(c) (West 2000). Through the incorporation by reference of section 3-814(c) in section 5-2-4(b) of the Unified Code of Corrections, such a challenge is also available to NGRI acquittees.  730 ILCS 5/5-2-4(b) (West 2000).
(footnote: 1)
 In addition to section 814(c), section 814(d) contemplates a review of an inpatient's actual treatment.  Section (d) states that: "The recipient or an interested person on his or her behalf may request a hearing or the court on its own motion may order a hearing to review the 
treatment
 being received by the recipient."  (Emphasis added.)  405 ILCS 5/3-814(d) (West 2000).  This subsection contemplates a review not of the plan on its face, but of the actual treatment a defendant is receiving under the plan.  Section 3-814(d) is also applicable to NGRI acquittees under the incorporation language of section 5-2-4(b). 
 730 ILCS 5/5-2-4(b) (West 2000).

Defendant argues that even if the trial court is correct in its ruling that the plan itself is facially adequate under the statute, the treatment he is receiving under the plan must be reviewed to determine if it is adequate and humane.  Defendant contends that under section 5-2-4(e) and section 3-814(d), both applicable to NGRI acquittees, a hearing on this question is mandatory and thus that the trial court erred in declining to allow defendant a hearing to review his treatment.  730 ILCS 5/5-2-4(e) (West 2000
).  The State counters that review of actual treatment is governed exclusively by section 3-814(d) of the Mental Health Code and that, by the plain language of the statute, such hearings are discretionary.  A reading of the plain and unambiguous language of both section 3-814 and section 5-2-4 convinces us that defendant is incorrect in contending that the statutes mandate a hearing to review actual treatment. 

Defendant argues that the newly revised language of section 5-2-4(e) dictates that a request to review the adequacy of treatment under the treatment plan must be the subject of a hearing.  This section now reads: 

"A defendant admitted pursuant to this Section, or any person on his behalf, may file a petition for 
treatment plan review
, transfer to a nonsecure setting within the Department of Human Services or discharge or conditional release under the standards of this Section in the Court which rendered the verdict.  Upon receipt of a petition for treatment plan review, transfer to a nonsecure setting or discharge or conditional release, the Court 
shall
 set a hearing to be held within 120 days."  [Emphasis added.] 730 ILCS 5/5-2-4(e) (West 2000).

Defendant interprets this section as stating that a hearing to review treatment plans is mandatory and that the phrase "treatment plan review" encompasses both section 3-814(c) challenges (facial review of the plan for statutory compliance) and section 3-814(d) challenges (review of defendant's treatment under the plan).  That both types of review are contemplated by section 5-2-4(e), according to defendant, is clear when section 3-814, entitled generically "Treatment Plan," is read as a whole.  This section contains the procedures for both challenges and states that"the purpose of the filing, forwarding, and review of treatment plans and treatment is to ensure that the recipient is receiving adequate and humane care and services."  405 ILCS 5/3-814(b) (West 2000).  The Code defines adequate and humane care and services as "services reasonably calculated to result in a significant improvement of the condition of a recipient of services confined in an inpatient mental health facility * * * or services reasonably calculated to prevent further decline in the clinical condition of the recipient."  405 ILCS 5/1-101.2 (West 2000).  
Defendant contends that both types of challenges serve a similar purpose and that both are encompassed by the umbrella phrase "treatment plan review."  Defendant further contends that the legislature also intended section 3-814(d) to require mandatory hearings for treatment review. 

We agree with defendant that under the rules of statutory construction, the word "shall," as used in section 5-2-4(e), is generally indicative of mandatory intent.  
People v. Singleton
, 103 Ill. 2d 339, 341, 469 N.E.2d 200 (1984).  However, we are not persuaded by defendant's interpretation of the phrase treatment plan.  We read the unambiguous language of the section to cover only procedures for review of treatment plans and not actual treatment. 
 Section 5-2-4(e)  by its plain language makes no mention of review of actual "treatment."  Section 5-2-4(b) recognizes a distinction between the two concepts, stating, "the admission, detention, care, treatment or habitation, treatment plans, review proceedings, including review of 
treatment
 and 
treatment plans
, * * * shall be under the Mental Health and Developmental Disabilities Code."  730 ILCS 5/5-2-4(b) (West 2000).  This section demonstrates that within this Act, the legislature considered the concepts of treatment and treatment plan as distinct.  We therefore conclude that procedures for review of actual treatment of NGRI acquittees are unaffected by section 5-2-4(e)
 and are instead governed by section 3-814(d) of the Mental Health Code.  Under section 3-814(d), an inpatient's right to a hearing to review actual treatment is provided for by repeated use of the word "may," indicating that holding such a hearing is within the discretion of the court.  405 ILCS 3-814(d) (West 2000). 

As the court in 
People v. Chiakulas
 288 Ill. App. 3d 248, 252, 681 N.E.2d 35, 37 (1997) noted, the two statutes at issue are designed to complement each other and can be read together and harmonized. 
 Section 5-2-4(b) indicates that most aspects of a patient's involuntary admission and confinement are governed by the Mental Health Code but also provides specific provisions applicable only to NGRI acquittees.  The Mental Health Code offers comprehensive definitions, requirements, and procedures for involuntary confinement and review of that confinement but indicates that when the patient is an NGRI acquittee, specific provisions in section 5-2-4 governing review of treatment plans should dictate the proper procedures.  405 ILCS 5/3-814(c) (West 2000).  In essence, both statutes incorporate each other by reference and send the reader back and forth between them depending upon which section applies.  

Sections 5-2-4(e)-(g) unequivocally outline an NGRI defendant's right to a hearing on review of treatment plan but are silent on the issue of review of actual treatment.  Section 5-2-4(b) indicates that where the Code of Corrections is silent, the Mental Health Code governs.  730 ILCS 5/5-2-4(b) (West 2000).  The Mental Health Code unequivocally states that when a patient seeks review of his or her actual treatment, whether to hold a hearing is within the discretion of the court.  The section reads: "[t]he recipient or an interested person on his or her behalf 
may
 request a hearing or the court on its own motion 
may
 order a hearing to review the treatment being received by the recipient."  (Emphasis added.)  405 ILCS 5/3-814(d) (West 2000).  
We thus find that defendant is not correct that the court erred simply by exercising its discretion not to hold a hearing.  Defendant forwards no argument that, in substance, this decision was an abuse of discretion.

Finally, we acknowledge that an anomaly lingers in this analysis.  Section 5-2-4(e)-(g) provide a mandatory, fully adversarial hearing with mandatory review by an independent psychiatrist for the complex and involved questions of transfer to a nonsecure facility and discharge. Under our reading, these sections also provide such protections for the much less complex analysis of whether an NGRI acquittee's treatment plan is facially adequate, while withholding the protections for the obviously complex question of review of defendant's actual  treatment.

We note that the Mental Health Code, recognizing that treatment plan review is a more ministerial process, does not even provide for a discretionary hearing of such a challenge, offering merely "court review."  405 ILCS 5/3-814(c) (West 2000).  On the other hand, the Code does provide a discretionary hearing and independent psychiatric review of the more involved question of review of actual treatment.  405 ILCS 5/3-814(d).  That section 5-2-4 of the Code of Corrections should do the opposite is indeed anomalous.  Be that as it may, however, the plain and unambiguous language of section 5-2-4(e) provides only for treatment plan review and leaves this court no room to expand its coverage to review of actual treatment. 

Defendant next appeals the trial court's decision to deny him the right to review of his treatment by an independent psychiatrist under section 5-2-4(f).  730 ILCS 5/5-2-4(f).  In his oral request at the conclusion of the court's consideration of the treatment plan, defendant reiterated his desire for a hearing to review his actual treatment and made his first request for an independent psychiatric evaluation as part of that proceeding.  The trial court denied the request for a hearing and a psychiatric evaluation.

Defendant is correct that under section 5-2-4(f), "[i]f requested by either the State or the defense or if the court feels it is appropriate, an impartial examination of the defendant by a psychiatrist or clinical psychologist * * * who is not in the employ of the Department of Human Services 
shall
 be ordered, and the report considered at the time of the hearing." [Emphasis added].  730 ILCS 5/5-2-4 (f) (West 2000).  However, the "hearing" referred to in this subsection is the hearing mandated by section 5-2-4(e), which, as just discussed, covers only treatment plan review, transfer to a nonsecure setting, or discharge.  Independent psychiatric examination for review of actual treatment is governed by section 3-814(d).  Under that section, "[t]he court may order an independent examination on its own initiative and shall order such an evaluation if either the recipient or the State's Attorney so requests and has demonstrated to the court that the plan cannot be effectively reviewed by the court without such an examination."  405 ILCS 3-814(d) (West 2000).  Defendant contends that the trial court erred in failing to give him an opportunity to demonstrate the need for an independent examination.  Under our reading of the section, however, defendant has put the cart before the horse.  The issue of whether to grant an independent examination is not raised until the court, in its discretion, decides to hold a hearing.  In this case, the court declined to hold a hearing to review defendant's treatment and thus the question of an independent examination never became an issue.  We therefore conclude that it was not error for the trial court to exercise its discretion in declining to address the issue of an independent psychiatric review when declining to grant defendant a hearing to review his actual treatment.

CONCLUSION

In conclusion, we affirm the trial court's finding that defendant's treatment plan was adequate.  We also find that the trial court did not err in denying defendant's request for a hearing and an independent psychiatric evaluation to determine whether he is receiving adequate treatment. 

Affirmed.

CAHILL and McBRIDE, JJ., concur.

FOOTNOTES
1:
Although our disposition obviates the need to rule on this issue, we note that defendant's initial challenge to his treatment plan is subject to the procedural provisions of section 5-2-4(e)-(g), including a mandatory, adversarial hearing, and review by an independent psychiatrist.  730 ILCS 5/5-2-4(e)-(g) (West 2000).  However, by pursuing his relief in two tiers, defendant specifically declined a formal hearing on his facial challenge to the treatment plan and can not now contest the court's failure to hold a full hearing on the issue.